IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DANIEL BRIGHAM
RICKY HORTON
KOREY STEVENSON



V.                                Civil Action No. DKC-20-1190

COMISSIONER DAYENA CORCORAN
FRANK BISHOP
RICHARD RODERICK, and
LAUREN BEITZEL

* * * * * * * * * * * * * *

PLAINTIFF'S MOTION IN OPPOSITION TO DEFENDANTS MOTION TO DISMISS OR ALTERNATIVE MOTION FOR SUMMARY JUDGMENT

Plaintiffs Brigham, Horton, and Stevenson files this consolidated opposition in response to the Defendants Motion To Dismiss or Alternative motion for Summary Judgment, and states:

There are genuine issues of material fact that preclude summary judgment for the Defendants on the Plaintiffs

## CLAIMS

Summary Judgment is to be granted only if the record before the Court shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Rule 56(c), Fed. R. Civ. P. A material fact is one that might affect the outcome of the suit under the governing law. See, Anderson v. Liberty Lobby Inc., 477 U.S. 242 248, 106 S Ct 2505 (1986).

## ARGUMENT

### DUE PROCESS OF LAW

In Wilkinson v. Austin, 545 U.S. 209, 162 L Ed 2d 174, 125 S Ct 2384 (2005), the Court made itself clear, the court of Appeals was correct to find that inmates possess a liberty in avoiding assignment to restrictive conditions of confinement.

Liberty interest in the prison context are generally limited to freedom from restraint which imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. States may, under certain circumstance create liberty interests which are protected by the due process clause. In deciding whether the state created a liberty interest the real concerns undergirding the liberty protected by the due process clause, are whether the state deprived the prisoner of an interest of real substance. Thus, the focus of the liberty interest inquiry rest upon the nature of the deprivation. See, Austin v. Wilkinson, 189 F. Supp. 2d 719 (2002).

DOC.100.0004 (Defendants Exhibits 2/107-123) is the policy that govern max II structure housing inmates procedural due process rights.

Such requirements provide procedural safeguards for inmates who are and who may be seriously mentally ill (SMI).

DOC.100.0004(1)(b) (Defendants Exhibit 2/110) states: If the case management plan process identifies or made aware by other facility staff of inmate behavior that may qualify an inmate for placement in Max II SH, a case management specialist shall: refer the inmate to the psychology department for a mental health evaluation using a referal for psychology service form (available from psychology service) and if the mental health evaluations find that the inmate;

is seriously mentally ill, may not recommend the inmate for Max II SH. (Defendants Exhibit 2/110).

DOC.100.0004(1)(b) give inmates with serious mental illness two safeguards. (1) First the inmates must be refered to the Psychology department for a mental health evaluation. And (2) if the mental health evaluation finds the inmate to be seriously mentally ill, the inmate may not be recommended for Max II SH. Therefore, no inmate can be placed in Max II SH without first determining if that inmate is (SMI) through psychological and psychiatric evaluations.

Defendant Lauren Beitzel violated Ricky Horton's (Mr. Horton), Daniel Brigham (Mr. Brigham), and Korey Stevenson's (Mr. Stevenson) procedural due process rights because she approved plaintiff's placement within the MaxII SH facility without first conducting such evaluations.

Mr. Brigham was assigned to MaxII SH on Febuary 8, 2018 (Defendants Exhibit 2 Page 99-100). Mr. Brigham filed a complaint against defendants because he was not refered to the Psychology department for mental health evaluations prior to being assigned to MaxII SH. On July 18, 2019, Defendant Mr. Roderick completed a referal for Psychological service form one whole year later. Defendants state in their motion to dismiss (page 3-4) that they violated Mr. Brigham's state created procedural due process rights because it was assumed that since Defendant Beitzel was on the review team for Mr. Brigham's placement, that the formal referal was not needed.

COMAR 10.21.17.02 is the Maryland code and regulation that defines what the department of public safety and correctional service considers to be a serious mental illness. See Attachment 1 - COMAR 10.21.17.02

COMAR 10.21.17.02 states:

serious mental illness means a mental disorder that is:
(a) manifest in an individual 18 years old or older;
(b) diagnosed, according to a current diagnostic classification system that is recognized by the Secretary as:

(i) schizophrenic disorder;
(ii) major affective disorder;
(iii) other psychotic disorders, or
(iv) borderline or schizotypal personality disorder, with the exclusion of an abnormality that is manifested only by repeated criminal or otherwise antisocial conduct;

and

(c) characterized by impaired functioning on a continuing or intermittent basis, for at least 2 years, and includes at least three of the following:

(i) inability to maintain independent employment;
(ii) social behavior that results in interventions by the mental health system;
(iii) inability, due to cognitive disorganization to procure financial assistance to support living in the community;
(iv) severe inability to establish or maintain a personal support system; or

(v) need for assistance with basic living skills.

On 7/25/2019, Ms. Beitzel evaluated Mr. Brigham one year later after the damage was already done (Defendants Exhibit 1- page 14); and Mr. Stevenson was evaluated on 4/1/2020 (Defendants Exhibit 1 page 9). Both inmates evaluations are void of any evidence showing whether plaintiff's were tested for disabilities that the department of public safety and corrections consider to be (SMI).

Ms. Beitzel's evaluations of Brigham and Stevenson were a sham. Ms. Beitzel interviewed Plaintiff's and did No testing to determine if Mr. Brigham or Mr. Stevenson suffer from what the Department of Corrections consider to be a serious mental illness.

During the administrative remedy process, case management specialist John White sent a correspondence to Deputy Director Robin Woolford stating that "Ms. Beitzel review inmates mental health records to see if the inmate is SMI". see Attachment 2- message to Robin Woolford.

It is clear, Ms. Beitzel doesn't do any psychological or psychiatric testing when evaluating inmates to determine if inmates is SMI. Ms. Beitzel only interviews inmates, and reviews their mental health records to see if the inmate is SMI. Assigning Plaintiffs to Max II SH in such a manner

is improper because Ms. Beitzel is making a decision based on inadequate assessment and incomplete records.

Defendants argued in their motion to dismiss or Alternative motion for Summary Judgment (page 2), that Daniel Brigham had a mental health intake on August 20, 2009; that Ricky Horton had a mental health intake on June 16, 2014 and that Korey Stevenson refused his mental health intake on March 31, 2014.

Defendants continue their argument by arguing Mr. Brigham Mr. Stevenson, and Mr. Horton carries a mental health diagnosis but is not considered to be seriously mentally ill.

These conclusions are improper because: (1) state created procedural due process require new evaluation to be done before an inmate's placement in Max II SH. (2) Korey Stevenson refused his mental health intake, so there is no way Ms. Beitzel could say whether or not his mental condition is serious or not. And (3) there was never a referal for psychological service form completed on behalf of Mr. Horton or an evaluation was not done on him;

And the record is void of Defendants putting forth any evidence to refute this claim. Although Mr. Horton was not refered to the Psychology department for an evaluation, Ms. Beitzel still gave her approval for Mr. Horton's placement in Max II SH, even when Ms Beitzel knew she did not conduct

the evaluations. (see Defendants Exhibit 2- page 93-94)

Mr. Horton has suffered from serious mental illnesses since childhood (see Attachment 3). If Defendants would have followed MaXII SH procedures, Mr. Horton could have provided Ms. Beitzel with mental health documents of his serious mental disorders (Attachment 4). It is clear that N.B.C.I is under-identifying inmates with SMI, because there is no way Mr. Horton is classified as SMI in the community, but then his condition disappears when he becomes incarcerated. Furthermore, medication records generated by NBCI show that Mr. Horton suffers from a Bi-polar 1 disorder, mix severe with a psychotic disorder (Attachment 5).

Mr. Horton's Bi-polar disorder, mix severe with psychotic disorder, along with his cognitive and neuropsychological impairments, are conditions that the Department of Public Safety and Corrections consider to be a serious mental illness (Attachment 1).

Eighth Amendment

The six components for evaluating the objective component of deliberate indifference to an inmate's serious medical needs are: (1) a systematic program for screening and evaluating inmates to identify those in need of mental health care; (2) a treatment program that involves more than segregation and close supervision of mentally ill inmates; (3) employment of a sufficient number of trained mental health professionals; (4) maintenance of accurate, complete and confidential mental health treatment records; (5) administration of psychotropic medication only with appropriate supervision and periodic evaluation; and (6) a basic program to identify, treat, and supervise inmates at risk for suicide. Coleman v. Wilson, 912 F. Supp. 1282, 1298 n.10, 1305-06 (E.D. Cal. 1995).

In 2017, Disability Rights Maryland (DRM) conducted an investigation into NBCI (Attachment 6).

DRM is a federally mandated non-profit legal advocacy organization charged with advancing the rights of people with disabilities.

DRM and their experts found that NBCI under-identify serious mental health and other disabilities (Attachment 6- page 7).

NBCI also reported that it is not able to provide testing for either intellectual disabilities or traumatic brain injury (Attachment 6 - page 10).

DRM also found that NBCI lacks mental health staffing and other services (Attachment 6 - page 10).

Under the eighth amendment the defendants are required to maintain a system in which inmates are able to make their needs for mental health care known to competent staff, to provide such care before inmates suffer unnecessary and wanton infliction of pain.

Defendants under-identifying serious mental illness and failure to identify intellectual disabilities lead to plaintiffs placement into a max II SH facility not designed for inmates with SMI.

There is a lack of comprehensive, standardized screening for mental illness. The mechanisms on which Ms. Beitzel rely are either use haphazardly, or depend for efficacy on incomplete or non-existent medical records.

## Conditions of Confinement

Plaintiffs placement inside of the Max II SH facility is because of defendants failure to complete referals and conduct adequate mental health evaluations.

Plaintiffs placement inside of Max II SH is an infliction of pain because the rules within Max II SH does not consider how a person's disabilities impacts behavior, in which individuals with disabilities are over sanctioned for their behaviors. Since the start of Max II SH, numerous inmates have completed the Max II SH program, hence, plaintiffs have been stuck in the Max II SH facility because of their inability to conform to the rules when it is a fact that they suffer from conditions beyond their control. Furthermore, Ms. Beitzel's failure to identify inmates with SMI, puts plaintiffs in a position where they can not receive the care they need.

Due to the investigation conducted by DRM, the Defendants in this matter can not claim lack of awareness. Because the Plaintiff's behaviors and medical records, Mr. Brigham's and Mr. Horton's need for mental health care is both apparent and serious. The Defendants knew they lacked the ability to identify inmates with SMI and still placed Plaintiffs in Max II SH without finding a solution to get proper evaluations done.

Since the conclusion of DRM's findings, nothing has changed at NBCI.

Americans With Disabilities Act

In their motion (Defendants) to dismiss (page 20), they argue that Plaintiffs have failed to demonstrate whether they suffer from any disabilities as defined under the ADA. Mr. Brigham's Bi-polar disorder (Defendants Exhibit 1-page 15), and Mr. Horton's Bi-polar disorder, along with his cognitive and neuropsychological impairments, are qualified disabilities defined under the ADA (Attachment 7-page 3).

Mr. Brigham and Mr. Horton is being discriminated against because of their behavior when it is a fact that they suffer from conditions beyond their control. The Defendants consideration for placing the Plaintiffs in Max II SH was based on their behaviors, but did not consider how their disabilities impact their behaviors.

To comply with ADA standards, the state of Maryland created a (SMI) structured housing facility at the same time they created the Max II SH facility (Attachment 8).

Plaintiffs are not being treated the same as similarly situated inmates who suffer from disabilities, in which Max II SH does not accommodate inmates with mental health disabilities. Ms. Beitzel's failure to identify Mr. Brigham and Mr. Horton

12.

as SMI is depriving Plaintiffs from receiving housing, treatment plans, and services more suitable for their conditions.

## Defendants Are Not Entitled To Qualified Immunity

In order to overcome the claims of qualified immunity, A plaintiff must show that his constitutional rights were clearly established. Treats v. Morgan, 308 F.3d 868 (2002).

Through their opposition, the Plaintiffs have established that Ms. Beitzel has clearly violated their established constitutional rights.

In Shiheed, Judge George Levi Russell made it clear, the determination of whether defendants are entitled to qualified immunity is more appropriately addressed after the facts of the case have been developed and a determination has been made as to whether the plaintiffs suffered a violation of his constitutional rights.

Accordingly, dismissal of the complaint based on qualified immunity is not proper at this time. (Attachment 9-page 4) (Shiheed v. Shaffer)

# Exhaustion of Administrative Remedies

The rule is that the plaintiff must exhaust available Administrative Remedies. Mr. Brigham filed suit on behalf of Korey Stevenson on May 4, 2020. Mr. Stevenson was unaware that his name was already in the lawsuit. By the time Mr. Stevenson started exhausting his remedies, he received a notice from the court telling him he had 30 days to write the court so he can join the suit.

During the Administrative process, the Defendants of this matter made it clear to Mr. Brigham, that being this is a case management action, it is one of those decisions not subject to review through the Administrative Remedy Procedure (Attachment 10-page 2). Wherefore, Mr. Brigham filed suit with the belief that it was no exhaustion process available for Mr. Stevenson.

The reason Mr. Stevenson exhausted his remedies during the pendency of this lawsuit is because he was already doing it before he received the 30 day notice from the court.

Furthermore, when a plaintiff fails to exhaust their remedies, this circuit usually dismisses the case without prejudice and allow the plaintiff to exhaust his remedies. In this case there is no need to dismiss this case without prejudice, because the Plaintiff's remedies have been exhausted during the pendency of this lawsuit. In Neal v. Goord, the court made it clear, in future cases, they leave it to the

district court to determine which procedural practice is most appropriate. Neal v. Goord 267 F. 3d 116 (2001)

    Wherefore, defendants are not entitled to dismissal or summary judgement. Plaintiffs pray that this Honorable Court grant summary judgement in their favor and allow this case to proceed to trial.

Respectfully Submitted

x *[signature]*
x Korey Stevenson
x *[signature]*

Ricky Horton # 424-586
Korey Stevenson # 322-646
Daniel Brigham # 281-611